IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| GILBERT JIO #606242 | § | |
| v. | § | CIVIL ACTION NO. 6:08cv358 |
| JOHN NOLEN, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Gilbert Jio, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. As Defendants in the lawsuit, Jio named physician's assistant John Nolen and Dr. Tito Orig.

An evidentiary hearing was conducted on January 22, 2009, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing, the parties consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. §636(c).

At the hearing and in his complaint, Jio said that beginning in March of 2007, he began experiencing chest pain and numbness in his left arm and side. He had an EKG (electro-cardiogram, also called an ECG) done, but was told that the test showed that nothing was wrong. Since then, he said, the chest pains and numbness has continued, and he has also experienced sharp pinching pain in his left chest area, a hard heavy pounding and pressure in his chest, light-headedness, shortness of breath, and fatigue. In the week preceding the filing of the complaint, Jio said, he awoke during the night with an accelerated heart rate and convulsions. He says that he has continually complained to the Defendants, but all they do is run EKG tests and tell him that there is nothing wrong with him.

Jio complains that the Defendants will not "pursue the issue and make an accurate medical diagnosis of the problem." In addition, he says that he has complained of severe kidney pain, which has been ignored. He notes that he also has hepatitis C. Jio says that the medical treatment he has received is so incomplete as to amount to no treatment at all; the Defendants refuse to provide a stress test, echocardiogram, or any other diagnostic screening other than an EKG or an X-ray. He says that on one occasion, Nolen told him that "I don't know what the problem is so maybe you should talk to God about it."

The Court has received and reviewed a certified, authenticated copy of Jio's medical records. In reviewing these records, the Court will assume that Jio's testimony is true, and will disregard any factual assertions made at the Spears hearing or contained in the prison records which contradict factual assertions made by Jio. *See generally* Wilson v. Barrientos, 926 F.2d 480, 482-83 (5th Cir. 1991).

The medical records show that on March 6, 2007, Jio was seen in the clinic with a complaint of chest pain. A complete 12 lead EKG, for which the result is given as "normal sinus rhythm, normal EKG."[1] On March 13, 2007, Jio returned to the clinic with a complaint of numbness on his left side. Nolen noted that Jio had a history of high blood pressure and determined that the oxygen saturation level of his blood was 100 percent, meaning that Jio was not oxygen-deprived in the bloodstream, and that his hand grips were equal. Another EKG was run, which found sinus bradycardia but was otherwise normal.[2] Nolen ordered that Jio's blood pressure be checked once a week for the next four weeks.

---

[1] Electro-cardiograms are normally done with 12 leads, or electrodes, which provide information about the heart's electrical activity in multiple directions. *See* http://library.med.utah.edu/kw/ecg/ecg_outline/Lesson1/index.html.

[2] Sinus bradycardia is a regular but unusually slow heart rate. It can have a number of possible causes, including good physical fitness, because fit hearts can pump enough blood in each contraction; it is not necessarily a sign of illness or that something is wrong. *See* http://www.medterms.com/script/main/art.asp?articlekey=19707.

Two days later, on March 15, Jio again complained of chest pain. He was seen by a nurse, who noted that his EKG's on file were normal, his blood pressure was 180/91 which is somewhat elevated, and his pulse was regular and strong. She called Dr. Orig, who gave her a verbal order for clonidine, a high blood pressure medication; the doctor also ordered that Jio be placed on the call-out list for evaluation the next day.

Jio saw Dr. Orig on March 16, 2007. The doctor noted that Jio complained of sharp pains beginning about two weeks earlier as well as numbness in his left arm and tingles in his hand. Jio also complained of shortness of breath on exhalation. Jio denied a history of hypertension but said that every time he came to the clinic, his blood pressure was high. Dr. Orig noted that Jio had a history of alcoholism and that he had previously been treated for hepatitis C, but was a "non-responder." He stated that Jio was well-nourished and well-developed, in no apparent distress but appeared anxious, and ambulatory. His chest was clear and his heart had a regular rate and rhythm with no murmurs. Dr. Orig did an Allen test, which checks to see if one of the arteries supplying blood to the hand is occluded, and this test was negative. He also found no peripheral swelling. Dr. Orig concluded that Jio suffered from stage I hypertension and ordered a blood pressure medication called Calan SR 180 (verapamil), blood pressure checks once a week for four weeks, a chest X-ray, and a follow-up appointment in two to three weeks.

On April 6, 2007, Jio's blood pressure was found to still be elevated. An individual treatment plan was created for him on April 10, 2007, at which time the verapamil was discontinued and he was started on another medication called enalapril. Jio was also counseled on the importance of diet and exercise, and weekly blood pressure checks were ordered for six weeks. These checks continued to show that Jio had elevated blood pressure.

On May 1, 2007, Jio was brought to the clinic complaining that his blood pressure was high despite the fact that he had taken two enalapril tablets that morning. He explained that he was taking both of his pills in the morning because his blood pressure was staying high. The nurse stated that she would hold him for a provider evaluation because his blood pressure was staying high and

3

because he was "taking meds as he feels they should be taken." Jio saw Dr. Orig on May 17, who ordered a high blood pressure medication called Plendil.

On June 6, 2007, Jio again saw Dr. Orig, who ordered aspirin, a medication called metoprolol, and an EKG. On July 5, Dr. Orig saw Jio and gave him reassurance because the EKG's had all been normal except for sinus brachycardia. On August 9, 2007, Dr. Orig discontinued the current prescriptions for enalapril and metoprolol, and ordered a new prescription for enalapril (20 mg instead of 10) and a blood pressure medication called hydrochlorothiazide. On September 11, 2007, Jio again complained of chest pain, and Dr. Orig discontinued the Plendil and gave him a medication called amlodipine.

Jio was seen by a physician's assistant named Buchanan on November 6, 2007; she ordered an EKG and said that the addition of a beta blocker to Jio's medications would be considered. He saw Dr. Orig on January 11, 2008, for an unrelated problem, and then saw Nolen on April 10, 2008, complaining of chest pain and decreased exercise tolerance. Nolen found that his heart rhythm was normal, his chest was flat and not tender, there were no murmurs, and his EKG was within normal limits, and so he reassured Jio that the problem was not cardiac in nature. On April 25, 2008, Jio again saw Nolen, who again did an EKG which proved to be within normal limits.

On May 21, 2008, Jio saw Dr. Orig complaining about acid reflux disorder, and Dr. Orig discontinued Zantac and prescribed a medication called omeprazole. On July 17, 2008, Jio saw Dr. Orig asking that his acid reflux medication be renewed and saying that the amlodipine made his heart slow, and so Dr. Orig renewed the acid reflux medication, discontinued the amlodipine, and prescribed a medication called diltiazem.

On August 20, 2008, Jio saw a nurse, complaining that his blood pressure goes up, he gets light-headed, dizzy, and has chest pains, although he was not having problems right then. The nurse found that his respirations were even and unlabored and his lungs were clear, but that Jio would hold his breath while she was checking his heart rate; when she told him to stop holding his breath and to breathe normally, he looked at her, grinned, and said "I don't know what you are talking about."

Jio signed his lawsuit on August 29, 2008. The medical records show that between March of 2007 and August of 2008, Jio had EKG tests done on eight different occasions, and chest X-rays, which proved normal, twice.

## Legal Standards and Analysis

Jio complains that the Defendants have been deliberately indifferent to his serious medical needs. The Fifth Circuit has held that deliberate indifference to a convicted inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997); Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir. 1989). However, simple disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985); Norton, 122 F.3d at 293.

Furthermore, malpractice alone is not grounds for a constitutional claim. Varnado v. Collins, 920 F.2d 320, 321 (5th Cir. 1991). Negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action. Graves v. Hampton, 1 F.3d 315, 319-20 (5th Cir. 1993). The Fifth Circuit has held that the fact that medical care given is not the best that money can buy, and the fact that a dose of medication may occasionally be forgotten, does not amount to deliberate indifference to serious medical needs. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

More pertinently, the Fifth Circuit has held that an inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs. Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). It should be noted in this regard that medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

In Domino v. TDCJ-ID, 239 F.3d 752 (5th Cir. 2001), a inmate who was a psychiatric patient expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute

examination; the inmate committed suicide two and a half hours later. The Fifth Circuit, in reversing a denial of summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1972). And, "the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Domino, 239 F.3d at 756; *see also* Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In this case, Jio's testimony, as well as the medical records which do not contradict his testimony, plainly show that Jio has received a substantial quantum of medical care, including numerous EKG's and chest X-rays as well as several different medications. His own testimony and the medical records refute any contention that the prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct showing a wanton disregard for any serious medical need. *See* Banuelos, 41 F.3d at 235. While there is no question that Jio consistently complained of chest pain and related symptoms, this medical need has been consistently responded through the running of diagnostic tests and the provision of various medications in an effort to provide treatment.

Jio made clear in his pleadings and at the hearing that his complaint was that the treatment which he received had not been effective, and that more and different diagnostic tests, such as stress tests or echocardiograms, should have been run. He acknowledged that he had received a lot of medication and that EKG's had been run, but said that more could be done. As noted above, however, mere disagreement with medical treatment received or a complaint that the treatment was not successful does not amount to a showing of deliberate indifference to a serious medical need. The medical records in this case make clear that Jio has not been the victim of such deliberate indifference.

Jio contends that on one occasion, Nolen told him that "I don't know what the problem is so maybe you should talk to God about it." Jio's grievance indicates that this comment was made at some point in April or May of 2008, possibly when he saw Nolen on April 25, 2008. The records show that on that date, Nolen ordered an EKG, which proved to be within normal limits.

While Nolen's comment appears to be inappropriate and offensive, Jio has not shown that it amounted to a constitutional violation. Rather than showing deliberate indifference to Jio's medical needs, Nolen ordered an EKG, and thus did not refuse to treat him, ignore his complaints, intentionally treat him incorrectly, or engage in any similar conduct clearly evincing a wanton disregard for any serious medical needs. Nolen's verbal expression of frustration over the fact that Jio complained of chest pain but repeated tests had shown nothing is not a constitutional violation in light of the fact that by his actions, Nolen showed that he was not deliberately indifferent to Jio's medical needs. *See* Bender v. Brumley, 1 F.3d 271, 274 n.3 (5th Cir. 1993) (language and gestures by correctional staff do not amount to constitutional violations); Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2nd Cir. 1973) ("use of words, no matter how violent," does not comprise a section 1983 violation). Jio's claim of deliberate indifference to his serious medical needs with regard to his complaint of chest pain is without merit.

Jio also complained that he suffered from "severe kidney pain." The medical records show that in February of 2007, he complained of kidney pain, and some lab samples were taken, but these proved normal. He did not complain specifically of kidney pain again until August 28, 2008, the day before he signed the lawsuit; at that time, he was told to provide urine specimens for analysis.

Jio has failed to show that the Defendants have been deliberately indifferent to his complaints of kidney pain. When he first raised the complaint in 2007, lab samples were taken and analyzed, but proved normal. When Jio again brought up his kidney pain, immediately before the filing of the lawsuit, more lab samples were ordered. The fact that he did not receive treatment for any kidney problems, when the lab results did not show any such problems, does not amount to deliberate indifference to a serious medical need. His claim on this point is without merit.

Jio mentions in his complaint that he has hepatitis C, although he does not specifically complain about the lack of treatment for this ailment; instead, he refers to the hepatitis C in the context of his kidney pain. The medical records indicate that Jio had previously been treated with interferon for hepatitis C in 2001, but apparently did not respond to the treatment; he is also in the chronic clinic for monitoring of his hepatitis C.

On September 20, 2007, the medical records show that Jio's liver enzyme (ALT) level was 77 units, which is somewhat higher than the normal range of 7 to 56 units. The TDCJ-ID infection control manual for hepatitis B and C says that inmates diagnosed with hepatitis C should be evaluated in the chronic care clinic at three-month intervals. If the inmate's ALT levels remain normal or above normal but less than 1.5 times the normal limit, the inmate should be monitored in the chronic care clinic and the diagnosis of hepatitis C added to the inmate's medical record. If ALT levels remain more than 1.5 - 2 times the upper limit of normal on 4/5 of the determinations done at three-month intervals, or laboratory evidence of more advanced disease is obtained, the inmate should be referred to the GI Clinic for evaluation of anti-viral therapy. *See* Davidson v. TDCJ-ID, civil action no. 6:03cv62 (E.D.Tex.), *aff'd* 91 Fed.Appx. 963 (5th Cir., March 19, 2004) (unpublished) (available on WESTLAW at 2004 WL 542206), *cert. denied*, 543 U.S. 864 (2004).

In this case, Jio's ALT level as of September 2007 was 77 units, which is less than 84, 1.5 times the normal limit of 56. Thus, under TDCJ policy, no referral for treatment was necessary at that time. Even if Jio intended to raise a claim concerning his hepatitis C, he has failed to show that the Defendants have been deliberately indifferent to his medical needs in this regard, and his claim on this point is without merit.

Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Jio's complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted. Consequently, his lawsuit may be dismissed as frivolous under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous. 28 U.S.C. §1915A. It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **23** day of **January, 2009.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE